## McCahan's Estate (No. 2).

*Decedents' estates—Contract—Claim for services—Allowance for services—Findings of fact—Attorney at law—Evidence—Contest.*

A finding of fact by an auditing judge of the orphans' court based upon sufficient evidence and confirmed by the court in banc to the effect that a claimant for services against a decedent's estate had a contract of employment with the decedent, will not be reversed in the absence of manifest error.

An attorney at law may testify as to declarations made by decedent in reference to a contract of employment which decedent had made with a niece, and that decedent had instructed him to insert in a will, which he had subsequently drawn, certain terms of the contract of employment.

Where a will directs that any of the legatees contesting or attempting to contest the will shall lose their legacies, a mere caveat will not be construed as a contest of the will.

Argued March 24, 1908. Appeal, No. 67, Jan. T., 1908, by Maria L. Taggart, from decree of O. C. Phila. Co., Jan. Term, 1907, No. 551, dismissing exceptions to adjudication in Estate of Mary C. McCahan, deceased. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions to adjudication of DALLETT, J.

The material portions of the adjudication were as follows:

The testatrix died November 12, 1905, leaving a will whereby, after making certain pecuniary bequests as set out in the petition for distribution and giving Robert McCahan her ten shares of Francisco Sugar Company stock and her sister, Maria L. Taggart, her jewelry, household furniture, etc., and 100 shares of her stock in the W. J. McCahan Sugar Refining Company, she gave to her trustee seventy shares of the McCahan Sugar Company stock, in trust, to pay the income to her brother, David Taggart, for life, and upon his death to pay the principal to his children, etc., and gave thirty shares of said stock to her trustee, in trust, to pay the income to her niece, Anna G. Taggart, for life, and upon her death to pay the principal to the issue of the said Anna G. Taggart, etc.

The residue of her estate she gave to her sister, Maria L. Taggart, and her brother, David Taggart, in equal shares.

She appointed her sister, Maria L. Taggart, executrix and trustee, and provided that in the event of any of her legatees contesting, or attempting to contest, her will such legatees should take no part of her estate, but their legacies should fall into the residue.

Messrs. Hallman, Bright and Brown presented a claim on behalf of Anna Gertrude Taggart for the value of 100 shares of the W. J. McCahan Sugar Refining Company stock, with interest from 1901, and testimony in reference to the claim was taken.

It appears therefrom that in the fall of 1900, on returning from a trip to Europe, the claimant went to live with her aunt, the testatrix, and continued to live with her until the end of July, 1902. Having studied physical culture and dramatic art, she had matriculated in the Women's Medical College, but she gave up these pursuits on her aunt's promise that if she would live with her until her death she would give her 100 shares of McCahan sugar stock. On May 2, 1902, the testatrix executed a will by which she gave to her niece, the claimant, " in consideration of my love and affection for her, and of her faithful services to me," 100 shares of the W. J. McCahan Sugar Refining Company stock, and in addition, after certain pecuniary bequests and the gift of the income from 100 shares of said stock to her sister, Maria L. Taggart, for life, gave her said niece the residue of her estate, including therein the remainder interest in fifty shares of the stock, the income of which she had bequeathed to her sister for life.

The testatrix, who had been afflicted with heart trouble, on July 9, 1902, suffered a stroke of apoplexy, and cried for her sister, the present accountant, who was sent for. The sister came in answer to the request, and assumed charge of the house and of the patient, and displaced the niece, who, being refused access to her aunt's room and, shorn of her power over the household, left the house. On November 12, 1902, the testatrix executed another will, that admitted to probate, the provisions of which are hereinbefore set out.

The contest over Mrs. McCahan's money evidently began long before her death. From 1900 until 1902 the niece was in favor, but in 1902 the sister superseded the niece in the tes-

tatrix's affections, and continued to occupy the close relationship until her death.

Disappointed at not receiving by the will probated the 100 shares of sugar refining company stock, the niece now claims the value of that stock under a contract with the testatrix.

The first question, therefore, is, was there a contract?

Mrs. Mogee, Sarah L. Gardiner, Elizabeth Hart and Frederick H. Stillwagen, the attorney who prepared the first will, and a competent and most important witness (Dowie's Estate, 135 Pa. 210 ; Padelford's Estate, 190 Pa. 35), have testified to the testatrix's declarations that she had promised the 100 shares of stock.

Mr. Stillwagen testified : " She said that Miss Anna Taggart had come to her only for a little while, and had since wanted to go back and continue her studies and ultimately read medicine, but she said : ' I have persuaded her not to do that. I told her if she would stay with me and live with me as long as I lived I would see her well taken care of.' She said : ' I have promised her 100 shares of the sugar stock,' and she said : ' Some day I want to draw a will, and I want that put in the will.' " Mr. Stillwagen subsequently prepared the will, dated May 2, 1902.

Mrs. Mogee testified that when the testatrix came to her to ask for a loan she (the testatrix) declared : " You give me the $500 and you will be well secured, as I have promised to give my niece 100 shares of the William McCahan sugar stock as soon as the executors of my deceased husband's estate turn it over to me." And again : " She told me that Anna had given up her medical pursuits and every source of income, and had gone to live with her, to remain with her as long as Mrs. McCahan lived." And again, that when Mrs. McCahan paid her the money she owed she said : " I have settled up with everybody, and Miss Taggart, Miss Anna, said : ' Everybody, aunt, but me. You have not given me my 100 shares.' She said : ' That is all right ; I will fix that, Anna.' "

Mrs. Gardiner, the seamstress employed by Mrs. McCahan, testified : " She told me she had taken Anna away from her studies and she intended to do what was right by her ; that she intended to provide for her so she would not have to teach

any more. She said she was not strong enough to teach, and not strong enough to study medicine and practice. She did not wish her to do it, and she was going to provide for her so she would not have to do anything after her death." And again, that when she told her niece to draw two checks, one for herself and one for her sister Maria, the claimant, said to her: "'Aunt, never mind my check; draw Maria's.' She says, 'I have provided for you,' and Anna said, 'In what way; do you mean the 100 shares?' And she said, 'Yes.'"

And Miss Hart testified: "She (Mrs. McCahan) went on to tell me that she had pursuaded Anna to give up her studies and to come there to live, that she would always provide for her, and spoke about Maria and Sarah being jealous, and how provoked they would be, and Anna told her, she said, 'Aunt, won't they be mad when they find out you gave me the 100 shares?' and Mrs. McCahan said, 'Yes, they would.'"

This testimony, in the opinion of the auditing judge, coupled with proof of the fact that the claimant did live with and perform certain services for the testatrix until the end of July, 1902, clearly establishes a contract: Thompson v. Stevens, 71 Pa. 161; Harper's Estate, 196 Pa. 137.

The character of the services, in view of the contractual relation, is not of the greatest importance, but while Miss Hamilton (a friend of the testatrix who visited her not less frequently than once a month), testified with regard to the claimant: "The only thing I saw was her having a good time in every way; the only thing she did was to help Mrs. McCahan spend her money; that is the only thing I saw her do." Mrs. Mogee, who had been introduced to the testatrix by the claimant, and whose visits averaged one in ten days for a considerable period, testified that the complainant "did everything from kitchen maid to trained nurse;" Mr. Stillwagen, who saw her on several visits, that "I should call her a nurse to her aunt," and Miss Gardiner, that the claimant performed "all the service that a nurse would do for her. She bathed her limbs (they were very much swollen and had to be bathed every morning), combed her hair, dressed her and did everything for her, besides having charge of the house."

The question to follow naturally is, has the claimant fulfilled her part of the contract? And the answer necessarily

is " No."   But it is clear that she was not permitted to complete it.

Dr. Kelley, called by the accountant, testified in answer to the question, " Will you give us a reason why you objected to Miss Anna Taggart coming into the room and did not object to Maria coming into the room ? "   " Because during my visits when Miss Anna Taggart came into the room she had a deleterious influence."   And Miss Rambo testified :   " Miss Taggart inquired if she might enter the room.   She first asked the doctor to let her in, and he told her she could not go in.   She asked Miss Maria Taggart to let her go in, and she told her she couldn't let her go in, as her sister was too ill," and in answer to Mr. Johnson's question, " Do you know any reason why there was a difference (why the testatrix was not too ill to see her sister and was too ill to see her niece) ? " answered " Yes, because Mrs. McCahan asked me if I would not keep her niece out of the room."   And Miss Gardiner testified that Miss Maria Taggart had made it so unpleasant for the claimant by taking all power out of her hands, and " instructing the servants not to obey any orders of hers, " that she could not stay.

Having performed a portion of her contract, therefore, and further opportunity to complete performance being refused by her aunt, two courses were open to her : the one to insist upon an opportunity to do her part, and the other to accept the rescission of the contract and withdraw.   That she chose the latter course appears without doubt from the letter of her then attorney, Mr. Pepper, who wrote on July 29, 1902: " Miss Taggart reports the situation of affairs at 1516 South Sixth street as being intolerable to her.   She accordingly expects to withdraw from the house in two or three days.   She will leave, whether or not she is permitted to see her aunt, Mrs. McCahan, again.   She prefers, however (since she took up her residence at the house at Mrs. McCahan's invitation), to terminate her residence at Mrs. McCahan's personal request:"   Moorhead v. Fry, 24 Pa. 37.

To what compensation, under these circumstances, is she entitled ?   She apparently never saw her aunt after July, 1902, although she lived until November 12, 1905.   Her compensation was not due under the contract until her aunt's death.

She perhaps expected, but it does not appear that she was notified, that she would receive it, but when the will is probated she finds that instead of 100 shares of the sugar company stock absolutely, worth in 1901, according to the testimony, $200 per share, she only receives thirty shares for life, with some remainder interest in seventy shares bequeathed to her father for life. Is this a sufficient compliance on the part of the testatrix? Figuring roughly, her life estate is worth but one-third of $6,000, or $2,000, while figured on her contract, as subsequently determined by the years testatrix survived, she earned for about twenty-one months out of sixty months, for which she was to be paid $20,000, or $7,000, a sum perhaps more than might be recovered upon quantum meruit, based upon the usual salary earned by a companion, combined with what would be reasonable damages for giving up the claimant's medical pursuits, but a sum figured at the rate determined upon by the parties themselves.

Deducting, therefore, the value of the life estate as being part payment on the contract (Reynolds v. Robinson, 64 N. Y. 589), the auditing judge allows the claim to the extent of $5,000, without interest.

The filing of the caveat may not, in the opinion of the auditing judge, be construed as a contest of the testatrix's will.

*Errors assigned* were in dismissing exceptions to adjudication.

*Frederick S. Drake, John Weaver* and *John G. Johnson,* for appellant.—It is a well-recognized proposition that this court will reverse the findings of fact of a lower court if such findings are manifestly erroneous, and appellant submits that the findings in this case, that there was a contract, is clearly erroneous: Carpenter v. Hays, 153 Pa. 432; Graham v. Graham, 34 Pa. 475; Miller's Est., 136 Pa. 239.

The protection which is given to confidential communications from client to counsel does not cease with the death of the client, where his estate or character might be injuriously affected by their disclosure: Dowie's Est., 135 Pa. 210; Bennett's Est., 8 W. N. C. 287.

*E. L. Hallman, Robert S. Bright* and *Simpson & Brown,*

for appellee.—The findings of fact made by the learned auditing judge cannot be now set aside unless clear error or mistake is shown: Lowry's Est., 5 Pa. Dist. Rep. 729; Mayhew's Est., 155 Pa. 94.

The evidence of Frederick H. Stillwagen cannot be excluded on the ground of privileged communication between client and lawyer: Goodwin Gas Stove, etc., Co.'s App., 117 Pa. 514; Turner's Est., 167 Pa. 609; Weaver's Est., 28 W. N. C. 95; Turner v. Warren, 160 Pa. 336; Bennett's Est., 8 W. N. C. 287; Dowie's Est., 135 Pa. 210; Padelford's Est., 190 Pa. 35; Russell v. Jackson, 9 Hare, 387; Nelson's Est., 132 Cal. 182 (64 Pac. Repr. 294); Doherty v. O'Callaghan, 157 Mass. 90 (31 N. E. Repr. 726); Graham v. O'Fallon, 4 Mo. 338; Kern v. Kern, 154 Ind. 29 (55 N. E. Repr. 1004).

There was no contest of the will by Annie Gertrude Taggart.

OPINION BY MR. JUSTICE ELKIN, May 4, 1908:

The principal question raised by this appeal is whether the evidence produced before the auditing judge was sufficient to establish a contract of employment and service alleged to have been entered into between the decedent, whose estate constitutes the fund for distribution in this proceeding, and the appellee, who presented her claim under such contract, and asked for an allowance of the same. The auditing judge and the court in banc have so found, and we concur in the views expressed and findings made by the learned judges who heard and determined the case in the court below. The contention as to the admissibility of declarations made by decedent to counsel and as to the proviso in the residuary clause relating to an attempt to contest the will, under the facts of this case, cannot be sustained.

Decree affirmed, costs to be paid out of the estate.